## Townsend & Freeman Company v. Tabor.

(Decided February 18, 1921.)

## Appeal from Breckinridge Circuit Court.

1. Contracts—Inconsistent Contracts—Instructions.—On a trial where the issue is whether one party had authority to bind another in the execution of a contract, and there were two contracts offered in evidence on the issue, and under the first he had the authority and under the second he had not, the court should have instructed the jury whether the latter contract terminated the former.

2. Contracts—Agency.—If one having large contracts for ties to fulfill, enters into a contract with another wherein he agrees to pay the latter stipulated prices for ties which he puts out in his territory, and the first party is to receive a commission on each tie so furnished and is to supply the second party with the money to carry on his business, the second party is not thereby created the agent of first party so as to bind him in the execution of a contract for the sawing and production of a large number of ties.

3. Contracts—Inconsistent Contracts—Termination.—When parties, sustaining at the time contractual relations with reference to a particular subject-matter, again enter into a new contract solely with reference to the same subject-matter, the terms of which are inconsistent with those of the original contract and the legal effect of which is essentially different, the first contract is terminated, although there be no express provision to that effect.

4. Contracts—Evidence.—The correspondence between the parties and their actions under the first contract which had been termin-

ated are incompetent evidence upon the issue whether the party had authority under the second contract.

JOHN P. HASWELL, JR., ALLEN R. KINCHELOE, W. S. BALL and W. D. FITZPATRICK for appellant.

HENRY DeHAVEN MOORMAN, D. C. WALLS and ERNEST WOODWARD for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant, an Indiana corporation, engaged in the buying and selling of certain timber products, especially railroad ties, had contracts for the delivery of ties to the Monon railroad and other parties.

On the 20th of January, 1917, it entered into a contract of partnership with Head, of Breckinridge county, Kentucky, the company agreeing to supply Head with sufficient money to buy and produce ties in his locality, and Head agreeing to devote his entire time to the business of buying and operating, and to keep an accurate account of all purchases, operations and expenses other than his individual expenses, and to render an account to appellant each week, and to send all cash to appellant as soon as received; and the profits were to be shared equally.

Little was accomplished under this contract, only one small tract of timber being bought by Head, and no ties were produced from that until after the contract was terminated.

Both parties were dissatisfied with the contract, as its purpose was not being accomplished, and they sought to enter into a different relationship under which the buying and production of ties might be facilitated.

Therefore, on the third of April, 1917, without expressly abrogating the contract of January 20th, appellant and Head entered into a contract "for handling of ties" wherein the company agreed to pay Head specified prices for certain kinds of ties "which Mr. Head puts out in his territory," and the company was to receive two cents per tie commission and "supply Mr. Head with any reasonable sum of money to carry forward his business." All remittances were to be made to the company and it was in turn to remit to Head after deducting its commissions. The concluding clause in the contract is:

"The above is to be understood as the essence and truth of the business of W. N. Head and the Townsend & Freeman Co."

On the 30th of July, 1917, while the contract of April 3rd was in effect, Head, assuming to act for the Townsend & Freeman Co., contracted with the appellee, Tabor, to saw for the company between that date and the first of January, 1918, 75,000 ties in Breckinridge county at an agreed price, and further agreed, in the name of the company, to furnish logs to Tabor at his mills sufficient to keep them running at full capacity.

This is an action by Tabor against appellant asking for damages for breach of said contract, wherein he alleges he had made arrangements to complete the same and was ready, willing and able to comply with it on his part, but that in August the defendant, wrongfully and in violation of his rights, directed him not to begin the sawing, and refused to furnish the logs, or any of them, for such sawing, whereby he was wrongfully deprived of his profits on the 75,000 ties.

The alleged contract is incorporated in the plaintiff's petition and purports to have been executed by "Townsend & Freeman Co., by W. N. Head."

The defendant answered, denying the execution or delivery of the contract, and denying that the plaintiff could have with his mills and equipment sawed the said timber into 75,000 ties by the first of January, 1918.

During the trial an amended answer was filed, pleading that on the 30th of July when Head assumed to execute the contract in the name of the defendant, it only sustained contractual relations with Head under its contract with him of April 3rd, and that he was not its agent and therefore had no authority to bind defendant in the execution of the Tabor contract.

The evidence on the main issue consisted largely of the two contracts referred to and the correspondence between appellant and Head both before the execution of the April contract and thereafter, and the jury returned a verdict for plaintiff, upon which judgment was entered.

The defendant asked the court to instruct the jury that under the April contract Head was not its agent, but the court declined to do this and merely submitted, without mentioning either of the contracts, the issue whether the jury believed Head was authorized by the defendant

to make the contract sued on; and then in another instruction left to the jury to determine whether the contract of January 20th had been terminated.

Whether the contract of April terminated the January contract was a question of law and should have been disposed of by the court in its instructions; likewise the question, whether Head had authority under the April contract to bind appellant in the execution of the Tabor contract, should have been settled by the court.

The contracts of January and April were exclusively between the same parties and dealt wholly with the same subject-matter. The January contract was a partnership and the purpose for which it was entered into was not being accomplished, and so the parties sought by entering into the April contract, whereby a new plan was adopted, to produce better results.

When parties, sustaining at the time contractual relations with reference to a particular subject-matter, again enter into a new contract solely with reference to the same subject-matter, the terms of which are inconsistent with those of the original contract and the legal effect of which is essentially different, the execution of the second contract will operate as a rescission of the first, although there be no express provision to that effect.

The rule is clearly stated in 6 R. C. L. page 923, as follows:

"Again, a contract need not be rescinded by an express agreement to that effect. If the parties to a contract make a new and independent agreement concerning the same matter, and the terms of the latter are so inconsistent with those of the former that they can not stand together, the latter may be construed to discharge the former. One contract is rescinded by another between the same parties, when the latter is inconsistent with, and renders impossible the performance of, the former, but if, though they differ in terms, their legal effect is the same, the second is merely a ratification of the first, and the two must be construed together."

See also McDaniels v. Robinson, 26 Vt. 316, 62 Am. Dec. 574; Buffum v. Breed, 116 Mass. 582.

That the two contracts were inconsistent and their legal effect essentially different, must be admitted. The first was a contract of partnership, while the second was

only a contract whereby Head was to furnish railroad ties to fill certain contracts appellant had, and Head was to receive all the profit made thereon, except a certain commission which appellant was to receive in consideration of furnishing to Head the money with which to operate his business. One constructed a partnership which authorized Head to bind appellant, while the other was merely an agreement by appellant to buy from Head at stipulated prices such ties as he might buy or produce.

Head could not operate in the production and purchase of ties as the partner of appellant and at the same time and in the same territory operate and purchase ties for himself upon which he would get all the profit except a stated commission. As the two contracts were inconsistent and their legal effect widely different, and the latter was in no sense supplementary to or a ratification of the first, the latter terminated the former.

It is apparent Head had no authority under the April contract to bind appellant in the execution of the Tabor contract, and any authority he had must have been given outside of that contract.

The court should, therefore, have instructed the jury that the January contract was terminated by the April contract, and that Head had no authority under the April contract to bind appellant in the Tabor contract, and there should have been submitted to the jury the question whether he had such authority under the oral conversations in evidence.

It follows from what we have said that none of the correspondence between the parties prior to the third of April should be admitted, nor any of their acts under the January contract, including the turning over of certain blanks to Head by appellant; but all the letters and correspondence between the parties, and their acts, between April 3rd and July 30th under the April contract, which have any bearing upon the question of authority, will be competent.

The judgment is reversed, with directions to grant appellant a new trial, and for proceedings consistent herewith.