Syllabus.

ROBERT CHAPPELL

*v.*

J. T. MCKNIGHT.

*Filed at Ottawa January 23, 1884.*

1. EXECUTOR—*must qualify, in order to execute power of sale.* Executors who fail or refuse to qualify and take out letters testamentary, can not execute a power given them by the will to sell real estate of the testator, and thereby bind the heirs or devisees.

2. STATUTE OF FRAUDS—*sale of land by an agent.* To make a sale of land by an agent of the owner valid under the Statute of Frauds, the contract must be in writing, signed by the agent, under a written authority from the owner, signed by such owner.

3. SAME—*authority to agent by telegraph.* Where an owner of land, on being notified of an offer to purchase, and learning all the facts, sends a telegram to his agent to accept the offer and make the sale, he will be bound by a contract of sale made by his agent, as directed.

4. VENDOR AND PURCHASER—*purchaser from agent of one of several owners—of his rights.* Where one purchases the entire title of a tract of land from an agent, who has authority to sell from only one of its several owners, he can not be compelled to receive a part of the title, but he may elect and compel a conveyance for the undivided part which the agent was authorized to sell.

5. SAME—*right of purchaser to possession—and herein, of purchase from agent of one of several owners.* The mere purchase of land does not authorize the purchaser to enter into possession without license from the seller. Such license may be express, or implied from circumstances. An agreement or covenant to convey the title of land at some future day, gives the purchaser no right to possession.

6. A tract of land belonging to ten heirs was sold by an agent having authority only from one of the heirs, and the purchaser entered into possession. On ejectment against him by a subsequent grantee of all the heirs, he contended that being lawfully in possession, no recovery could be had: *Held,* that his possession was not rightful, and that a recovery of the possession by the plaintiff was right.

7. SAME—*when an equitable title accrues to the purchaser.* A mere contract or obligation to convey land at a future time, on the purchaser performing certain acts, does not create an equitable title in such purchaser. It is only when he performs all acts necessary to entitle him to a deed, that he has an equitable title, which is one that a court of equity will enforce.

8. Agency—*of the good faith required of an agent—the case of a sale of land.* A party being desirous of purchasing a tract of land, made an offer to the agents of the owner, which was reported to the principal, but before any bargain was made a higher price was offered to the agent, which he reported by telegram. On learning this fact, the first party insisted on telegraphing the owner and learning immediately whether he would accept the first offer. In the meantime the owner had telegraphed to his agent to make no sale without his authority. Knowing these facts, the first party finally induced the agent to give him a written contract of sale, under which he took possession: *Held,* that the owner was not bound by the sale, because of the bad faith of his agent, which was known to and participated in by the purchaser.

9. All agents are required to act in the utmost good faith with their principals, and it is the duty of an agent to sell property to procure the best price in the market, or at least to make all reasonable efforts to do so.

Appeal from the Circuit Court of Knox county; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. McKenzie & Calkins, for the appellant.

Messrs. Williams & Lawrence, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of ejectment commenced by appellee in the Knox circuit court, against appellant, to recover a part of two lots in the city of Galesburg. The case was submitted to the court for trial, by consent, without a jury. Having heard the evidence, the court found the issues for the plaintiff, and after overruling a motion for a new trial, rendered judgment in his favor. Defendant thereupon brings the case to this court on appeal.

The material facts in the case are, that Mrs. S. W. Ferris died testate, seized of the property in controversy. By her will she devised her property to her children, and she appointed her sons, Samuel and Henry E. Hitchcock, executors of her will, but they never qualified, or obtained letters testamentary. The will conferred upon them power to sell real

estate, and acting under the belief that they could, on the probate of the will, exercise all of the powers it conferred, they did not give bond, or receive letters testamentary on her estate. Soon after her death Samuel and Henry E. placed the property in the hands of Merrill & Orange Comstock, a firm of insurance and real estate agents, to rent or sell, if they could find a purchaser at a price placed on the property by the Hitchcocks. Their appointment as agents was not in writing, but merely verbal. It does not appear that the other heirs were consulted, or ever consented, but on the contrary, Samuel and Henry E. seem to have supposed they were acting under the power contained in the will. Samuel and Henry were not residents of this State, but Samuel resided in Iowa, and Henry in Nebraska. Appellant offered the Comstocks $2250 for the place, and the offer was communicated to the Hitchcocks, but before the offer was accepted one Mathews offered to give $100 more than appellant had offered. The Comstocks informed appellant of the fact, and he at once telegraphed to Henry requesting him to telegraph the Comstocks whether he accepted his offer of $2250. The Comstocks had previously telegraphed the Hitchcocks of appellant's offer, and after Mathews made his offer they telegraphed the Hitchcocks, informing them of it; but before Henry received the telegram he telegraphed the Comstocks to accept appellant's offer, and on the receipt of their last telegram he answered directing them to accept no offer unless he approved it, thus limiting their authority to sell. Samuel, however, knowing of both offers, telegraphed the Comstocks to sell to appellant on his offer. Appellant urged the Comstocks to close the trade, and give him a written agreement, but they declined until they could hear from Henry in answer to their telegram informing him of Mathews' offer; but he pressed his demand until they yielded, and gave him a contract for the conveyance of the property. He paid them $250, and deposited $2000 in bank, to be paid on the

delivery of the deed executed by the heirs. Subsequently the heirs all joined in a warranty deed to appellee for the consideration of $2500, and thereupon he commenced this suit to recover the premises.

Appellant insists that he purchased the property and entered under the contract he obtained from the Comstocks, and that he is rightfully in possession, and being so, appellee is not entitled to recover. What, then, is the law arising on this state of facts? The second section of the Statute of Frauds expressly declares that all verbal contracts relating to title to, or any interest in, lands, for more than one year, shall be inoperative. It requires all contracts to be in writing, signed by the owner, or if by an agent, he must be authorized in writing, signed by the owner, and the contract by the agent to be in writing, and signed by him. Here no such authority was conferred on the Comstocks when they were appointed agents to sell, and had there been, it would only have bound Samuel and Henry, as they had no power or authority to bind the other heirs. Samuel and Henry, it seems, acted without reference to the consent or authority from the other heirs. This agreement between the Comstocks and appellant was void, and incapable of being enforced as an entire contract.

But it is claimed that Samuel and Henry are bound, because they directed the Comstocks to sell to appellant on his offer, by telegram, and that was in writing, and signed by them, and that fulfills the requirements of the statute. That is no doubt true as to Samuel, as he, in writing, authorized the sale to appellant after learning all the facts. Whilst appellant contracted for and supposed he was purchasing the title to the whole lot, he in fact only procured a contract for Samuel's interest, and he no doubt may claim and insist upon the conveyance of that interest to him by Samuel; but having purchased the whole, he can not be compelled to receive a part of the title, but may elect to insist upon receiv-

ing title to that part. In relation, however, to Henry, he was not bound, inasmuch as the Comstocks acted in bad faith with him, and appellant participated with them, and urged them to act in bad faith, knowing all the facts. The Comstocks telegraphed to Henry, notifying him of Mathews' higher offer, and it was bad faith to close the contract before they received his answer and directions, and appellant urged them to close the contract before the answer was received, notwithstanding they had at first declined, until they heard from Henry. All agents are required to act in the utmost good faith with their principals. It was the duty of these agents to procure the best price in the market, or at least make all reasonable efforts to do so, and to act otherwise is a breach of duty. They had telegraphed Henry, apprising him that more could be obtained for the property, and to have avoided bad faith they were required to await an answer. Instead of that they sold at the lower price, knowing they could obtain more, because it had been offered to them; and appellant induced them, knowing all the facts, to violate their duty, and having done so he can claim nothing from Henry, under the agreement.

The question then arises, whether the taking of possession by appellant was authorized by the agreement he received from the Comstocks. The contract was not binding on any of the heirs, as we have seen, but may be on Samuel. None of the heirs ever authorized the Comstocks to give appellant possession of the property. The mere purchase of land does not authorize the purchaser to enter into possession without license from the seller. Such license may be shown to have been express, or it may be implied from circumstances. In this case there is no pretense that any express license was given by the Hitchcocks, nor are we able to find any circumstance from which it may be inferred. Had the contract been legal and binding, it would not follow that appellant might enter into possession without an agreement with the

vendors authorizing him to enter. (*Williams* v. *Forbes*, 47 Ill. 148.) A mere contract for a sale of real property does not authorize an entry by the purchaser. An agreement or covenant to convey the title at a future time does not authorize the purchaser to enter without a license. (*Suffern* v. *Townsend*, 9 Johns. 35; *Cooper* v. *Starver*, id. 331; *Erwin* v. *Clinstead*, 7 Cow. 229.) This must be so on principle. The doctrine is uniformly recognized, and of general application, that the fee draws to it not only the right of, but the constructive possession. These rights at law accompany the fee, and must be recognized and enforced at law. A mere contract or covenant to convey at a future time, on the purchaser performing certain acts, does not create an equitable title. It is but an agreement that may ripen into an equitable title. When the purchaser performs all acts necessary to entitle him to a deed, then, and not till then, he has an equitable title, and may compel a conveyance. (Bispham's Equity, sec. 365.) When the purchaser is in a position to compel a conveyance by a bill in chancery, he then holds the equitable title. Before that he only has a contract for a title when he performs his part of the agreement.

Although appellant has a right to elect to enforce his contract if he chooses, and obtain Samuel's interest, he had not, nor has he yet, elected to become the purchaser of Samuel's interest. Until he so elects he has no right to possession, even if the contract for Samuel's interest was fully performed by him. He surely can have no right to possession under an agreement he may repudiate at will. Nor did the other heirs authorize the Comstocks to admit him to possession. In a proceeding at law, in the absence of a license, and there is nothing from which it can be inferred, he is not entitled to enter on the possession of the other heirs, and not having any right to possession, the judgment of the court below is right.

It is urged that the court erred in not allowing the legal propositions asked by appellant. It is enough to say they

were not applicable, under the evidence in the case. They are at variance with the views here expressed, and being so, the court below did not err in holding they were not the law applicable to the evidence in the case.

Perceiving no error in the case, the judgment is affirmed.

*Judgment affirmed.*